**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROXIE SHRAWDER,<br><br>Plaintiff,<br><br>v.<br><br>MEDEFIS, INC.,<br><br>Defendant. | No. 4:26-CV-00728<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**NOVEMBER 18, 2026**

Plaintiff Roxie Shrawder brings this action against Defendant Medefis, Inc. ("Medefis") asserting age discrimination in violation of two statutes: the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA").[1] Before the Court is Medefis' motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA").[2] For the reasons that follow, that motion will be granted, and this action will be stayed.

## I. BACKGROUND

Shrawder alleges that Medefis fired her because of her age. The following facts come from her complaint and from the arbitration agreement attached to Medefis' motion.

1 Doc. 1.
2 Doc. 7.

Medefis is a healthcare staffing provider that contracts with medical and non-medical professionals.[3] In 2019, Shrawder joined Medefis as an account manager.[4] As part of onboarding, Shrawder electronically executed numerous documents, including a code of conduct, a securities trading policy, and an arbitration agreement, which provided that she "consent[ed] to the resolution by arbitration . . . of all claims (common law or statutory) that the Company might have against [her], or that [she] may have against the Company."[5] Shrawder then began her job, which entailed contracting with healthcare systems, organizations, and facilities on behalf of Medefis.[6] Shrawder landed and managed several complex, high-yield accounts and earned a commission for each account that she managed.[7] In her role, Shrawder also trained new account managers.[8]

Then, during the COVID-19 pandemic, Shrawder took on additional responsibilities as she began managing the accounts of several nursing and retirement facilities.[9] In 2022, Medefis recognized Shrawder for her "exemplary work and customer service."[10] Around the same time, Shrawder's supervisor approached her about a possible promotion.[11] Shrawder stated that "she did not wish

---

3 Doc. 1, at 3.
4 *Id.*
5 Doc. 8, Ex. C.
6 Doc. 1, at 3-4.
7 *Id.* at 4.
8 *Id.*
9 *Id.*
10 *Id.*
11 *Id.* at 4-5.

to seek advancement" and said she likely would retire in 2024, when she would be "fully vested in the retirement plan offered by Medefis."[12] After this conversation, Shrawder continued in her position as an account manager.

In 2023, Medefis restructured and outsourced parts of its business.[13] It also told account managers that their commissions, earned with each managed account, would soon end.[14] The loss of commisions "greatly reduced" Shrawder's income, requiring her to postpone her retirement plans.[15] But in November 2023, Medefis fired her.[16] Shrawder alleges, despite the restructuring, that Medefis retained several younger account managers "whose performance was of lesser quality than Shrawder's performance."[17]

Shrawder now claims violations of the ADEA[18] and PHRA.[19] Her allegations are identical as to each claim. Citing the arbitration agreement signed by Shrawder, Medefis moves to compel arbitration pursuant to the FAA.[20] Shrawder has not responded to Medefis' motion despite five deadline extensions granted by this

---

12 *Id*. at 5.
13 *Id*.
14 *Id*. at 6.
15 *Id*.
16 *Id*.
17 *Id*.
18 *Id*. at 2-8.
19 *Id*. at 8-10.
20 Doc. 7.

Court.[21] Under Local Rule 7.6, Shrawder "shall be deemed not to oppose [this] motion."[22]

## II. ARBITRATION STANDARD

To compel arbitration, a court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement."[23] In answering those questions, courts keep in mind the "strong federal policy in favor of arbitration."[24] But any presumption of arbitrability goes to the scope of arbitration, not the formation of an arbitration agreement.[25] Whether an arbitration clause is enforceable hinges on whether the parties consented to arbitration in the first place.[26] Although courts ordinarily resolve that question "by relying on state contract

---

21 *See* Docs. 11, 13, 17, 19, 21.

22 M.D. Pa. L.R. 7.6.

23 *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009)).

24 *Century Indem. Co.*, 584 F.3d at 525*; see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)).

25 *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301-02 (2010).

26 *Id.* at 299 ("[T]he first principle that underscores all of our arbitration decisions" is that "[a]rbitration is strictly a matter of consent."); *see Silfee v. Auto. Data Processing, Inc.*, 696 F.App'x. 576, 577 (3d Cir. 2017) ("Because 'arbitration is a matter of contract . . . [and is] predicated upon the parties' consent,' a court ruling on a motion to compel under § 4 must first determine if the parties intended to arbitrate the dispute.") (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013)); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (collecting cases).

principles, state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA."[27]

The United States Court of Appeals for the Third Circuit "has established a two-tiered framework for assessing motions to compel arbitration."[28] First, if asserted claims would be clearly subject to an enforceable arbitration clause based on the face of the complaint and supporting documents, the motion is considered under a Rule 12(b)(6) standard.[29] But if it is unclear whether the parties have agreed to arbitrate, or if the plaintiff has provided additional facts sufficient to question the arbitration agreement, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."[30]

## III. DISCUSSION

### A. Applicable Standard

Here, the parties appear to have no disagreement "regarding the agreement to arbitrate."[31] Shrawder does not contest that she electronically executed an arbitration agreement as part of her onboarding. Nor does she suggest that Medefis' exhibits are

---

27 *Lamps Plus*, 587 U.S. at 183-84 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)).

28 *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022) (citing *Guidotti*, 716 F.3d at 776).

29 *Guidotti*, 716 F.3d at 776.

30 *Id.*

31 *Simonovich v. United Rentals, Inc.*, No. 25-15142, 2026 WL 1864188, at *4 (D.N.J. June 29, 2026).

inaccurate in any way—in fact, Shrawder does not even challenge the instant motion. Which is to say, "[Shrawder] has not put the Agreement to arbitrate at issue, nor has [she] identified any other disputed facts relative to the disposition of [Medefis'] motion."[32] The Court can consequently assume that the parties agree that no discovery is needed on the question of arbitrability.[33] Therefore, this motion will be decided under Rule 12(b)(6) and the Court will accept Shrawder's allegations as true.

**B. Validity and Scope of the Arbitration Agreement**

Pennsylvania's choice of law doctrine first asks whether the parties have chosen the relevant law.[34] Given that both Shrawder and Medefis respectively refer to Pennsylvania law in the complaint and briefs, they appear to implicitly agree that it governs this dispute.[35] The Court therefore applies Pennsylvania law.

"[C]ontract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration."[36] As a general rule, courts look to whether "the parties have . . . manifested their mutual

---

32 *Romero v. Ctr. for Excellence in Higher Educ., Inc.*, No. 21-1124, 2023 WL 172229, at *2 (D. Del. Jan. 12, 2023), *report and recommendation adopted*, No. 21-1124, 2023 WL 2662330 (D. Del. Mar. 28, 2023).

33 *See Simonovich*, 2026 WL 1864188, at *4-5.

34 *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999).

35 *Price v. Foremost Indus., Inc.*, No. 17-00145, 2017 WL 6596726, at *6 (E.D. Pa. Dec. 22, 2017) (applying Pennsylvania state law because "the parties appear to implicitly agree that Pennsylvania law applies, given that they cite no other state law in any of their filings").

36 *Kirleis*, 560 F.3d at 160 (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d. Cir. 2002)).

assent to the essential terms" of the contract.[37] Whether conduct constitutes assent is determined from the perspective of "a reasonable person in the position of the party," in light of "all the surrounding circumstances."[38] "The party seeking to compel arbitration bears the burden of proving the parties manifested an assent to be bound by an arbitration agreement."[39]

Medefis has met its burden. Take each element in order. First, Medefis' records show Shrawder as signing the arbitration agreement on May 14, 2019.[40] The accompanying signature statement declares:[41]

> I acknowledge that I have carefully read this arbitration agreement, that I understand its terms, and that I have entered into this arbitration agreement voluntarily and not in reliance on any promises or representations by the company other than those contained in this agreement. I agree to the terms of this arbitration agreement.

---

37 *Evans v. Gordon Food Servs.*, 3:14-CV-01242, 2015 WL 4566817, at *9 (M.D. Pa. July 29, 2015) (citing *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999)).

38 *Levin v. Prime Commc'ns. Inc.*, 361 A.3d 643, 650 (Pa. Super. Ct. 2026) (quoting *Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001)).

39 *Id.* (citing *Duffy v. Tatum*, 354 A.3d 14, 23-24 (Pa. Super. Ct. 2026)).

40 Doc. 8, Ex. B.

41 *Id.*

Courts routinely hold electronic signatures like Shrawder's to be valid forms of assent.[42] Second, the arbitration agreement begins with:[43]

> [Medefis] . . . will employ Employee . . . and [Employee] mutually consent[s] to the resolution by arbitration, under the applicable rules of [Judicial Arbitration and Mediation Services] of all claims (common law or statutory) that [Medefis] might have against [Employee], or that [Employee] may have against [Medefis] . . . . including but not limited to all claims relating in any way to [Employee's] employment by [Medefis] . . . .

These terms are definite, clear, and enforceable. They enumerate the claims subject to arbitration and stipulate to the rules of arbitration; further, the agreement's unquoted passages describe the costs of arbitration and the process through which arbitration is to be initiated.[44] Accordingly, both parties indicated an intent to be bound by the definite terms of the agreement. Third, as the passage above indicates, the agreement was supported by consideration in the form of employment. "In Pennsylvania, it is a well-settled legal principle that adequate consideration exists for an agreement attendant to an employment relationship where the agreement was

---

42 *See Dicent v. Kaplan Univ.*, 758 F.App'x. 311, 313 (3d Cir. 2019) ("Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent."); *see also Bonilla v. Adecco USA, Inc.*, 5:23-cv-02741, 2024 WL 945310, at *5 (E.D. Pa. Mar. 5, 2024) (finding electronic signatures to be sufficient to indicate parties' intent to be bound); *Jallad v. Madera*, 474 F.Supp.3d. 667, 672 (E.D. Pa. 2020) (same); *Hoffman v. Genpact*, 3:22-CV-00009, 2022 WL 4134740, at *6 (M.D. Pa. Sept. 12, 2022) (same) (quoting *Dicent*, 758 F. App'x at 313); 73 Pa. Stat. Ann. § 2260.305(a) ("An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of a person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.").

43 Doc. 8, Ex. C.

44 *Id.*

entered into at the inception of the relationship, even where the employment is at-will."[45] Here, Shrawder signed the agreement during onboarding, at the inception of her relationship with Medefis. The arbitration agreement is valid and enforceable.

Next, the Court asks whether "the merits-based dispute in question falls within the scope of that valid agreement."[46] It does. At this stage, "the strong federal policy in favor of arbitration"[47] applies if the scope of the agreement is ambiguous, and "every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible of an interpretation that covers the asserted dispute."[48] Shrawder makes no argument of the sort, and the plain language is dispositive regardless. The agreement encompasses "all claims . . . that [Shrawder] may have against [Medefis] . . . including but not limited to all claims relating in any way to [Shrawder's] employment by [Medefis]."[49] That covers claims arising from the end of Shrawder's employment with Medefis, such as the age discrimination claims she now pursues. The Court therefore finds that the arbitration agreement is valid and enforceable, and that it covers Shrawder's claims.

---

45 *Hoffman*, 2022 WL 4134740, at *6.

46 *Flintkote*, 769 F.3d at 220 (quoting *Century Indem. Co.*, 584 F.3d at 527).

47 *Century Indem. Co.*, 584 F.3d at 525.

48 *Callan v. Oxford Land Dev.*, 858 A.2d 1229, 1233 (Pa. Super. Ct. 2004) (quoting *Highmark Inc. v. Hosp. Serv. Ass'n of Ne. Pa.*, 785 A.2d 93, 98 (Pa. Super. Ct. 2001)).

49 Doc. 8, Ex. C.

### C. Stay Pending Arbitration

Because Shrawder's claims must be arbitrated, the Court must determine whether to stay or dismiss these proceedings. Medefis asks for one or the other but takes no position on which it prefers. But the choice is not for this Court to make. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."[50] Section 3 of the FAA provides that the Court "shall on application of one of the parties stay . . . the action until such arbitration has been had in accordance with the terms of the agreement."[51] Because Medefis moves for dismissal *or* a stay, its motion is an application for a stay. The Court must stay this proceeding.

## IV. CONCLUSION

The arbitration agreement is valid, enforceable, and covers Shrawder's claims. Accordingly, Medefis' motion will be granted to the extent it seeks to compel arbitration and stay this action.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

50 *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

51 9 U.S.C. § 3; *see Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, Civ. A. No. 19-83, 2019 WL 2077731, at *6 (E.D. Pa. May 10, 2019).